UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 26-02632-KK-DSRx** | Date: | May 22, 2026 |
|---|---|---|---|

| Title: | ***Ngwu Onyekachi Kingsley v. Todd M. Lyons et al.*** |
|---|---|

Present: The Honorable   KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE

| Dominique Carr | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:    (In Chambers) Order GRANTING Petitioner's Motion for Preliminary Injunction [Dkt. 2]**

## I.
## INTRODUCTION

On May 15, 2026, petitioner Ngwu Onyekachi Kingsley ("Petitioner"), who is currently detained in the custody of the U.S. Immigration and Customs Enforcement ("ICE"), filed a Petition for Writ of Habeas Corpus ("Petition") against respondents Todd M. Lyons, Marcos Charles, Markwayne Mullin, and Todd Blanche ("Respondents"). ECF Docket No. ("Dkt.") 1, Petition ("Pet."). On the same day, Petitioner filed an Ex Parte Application for a Temporary Restraining Order and/or Preliminary Injunction ("Application"), which the Court converted to the instant Motion for Preliminary Injunction ("Motion"). Dkt. 2, Motion ("Mot."); Dkt. 8.

The Court finds this matter appropriate for resolution without oral argument. See Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. For the reasons set forth below, Petitioner's Motion is **GRANTED**.

## II.
## BACKGROUND

### A.    RELEVANT FACTS

Petitioner is a Nigerian national. Pet. ¶ 14. He entered the United States on December 19, 2023, and was charged of being present in the United States without admission or parole on

December 21, 2023.  Id. ¶¶ 14-15.  Petitioner was subsequently released on an Order of Release on Recognizance and placed on an Alternative to Detention ("ATD") program.  Dkt. 10-1 at 4.

Petitioner has no criminal history and has always attended his ATD appointments.  Pet. ¶¶ 17, 22.  On "one or two occasions," however, Petitioner "was turned away by staff" when he tried attending an appointment that fell on a federal holiday.  Id. ¶ 17.  Petitioner was advised these appointments were "a scheduling mistake" and his absence "would not be counted against him."  Id.

On December 12, 2024, Petitioner filed an application for asylum and withholding of removal.  Id. ¶ 18.  The application remains pending.  Id.

On January 7, 2026, Petitioner appeared for a scheduled ATD appointment.  Id. ¶ 19.  An hour after arriving, "two ICE agents approached Petitioner and advised that he was under arrest." Id.  The ICE agents "handcuffed Petitioner, took his belongings, and escorted him out to a car."  Id. No warrant, nor any "evidence of changed circumstances," was presented during the arrest.  Id. Petitioner was taken into ICE custody.  Dkt. 10-1 at 3.

On January 12, 2026, Petitioner filed a bond redetermination request before an Immigration Judge, which was denied for lack of jurisdiction.  Pet. ¶ 20.  Petitioner then withdrew his request.  Id.

Petitioner remains detained at ICE's Desert View Annex in Adelanto, California.  Id. ¶ 22.

**B.    PROCEDURAL HISTORY**

On May 15, 2026, Petitioner filed the operative Petition against Respondents, raising the following grounds for relief:

1.    **Ground One:**  Warrantless Arrest, in violation of 8 U.S.C. § 1357(a)(2) ("Section 1357(a)(2)") and the Due Process Clause;
2.    **Ground Two:**  Revocation of Petitioner's Order of Supervision Without Notice of Reasons or Opportunity to be Heard, in violation of the Due Process Clause of the Fifth Amendment; and
3.    **Ground Three:** Prolonged Detention Without Individualized Bond Hearing, in violation of the Due Process Clause of the Fifth Amendment.

Id. ¶¶ 23-40.

On the same day, Petitioner filed the Application, seeking his immediate release from immigration custody or, in the alternative, a bond hearing.  Mot. at 2.  Among other things, Petitioner argues he was "re-detained without a word of explanation, without a scrap of paperwork, and without any hearing," in violation of the Due Process Clause.  Id. at 9.

On May 18, 2026, the Court converted Petitioner's Application to the instant Motion and set a briefing schedule.  Dkt. 8.

On May 20, 2026, Respondents filed a Response to the Motion and Answer to the Petition, asserting "Petitioner appears to be a member of the Bond Eligible Class certified in" Bautista v. Santacruz, 813 F. Supp. 3d 1084 (C.D. Cal. 2025), judgment entered sub nom., Maldonado Bautista

v. Noem, No. EDCV 25-01873-SSS-BFMx, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025), and is thus entitled to "at most . . . a bond hearing to be held before an Immigration Judge." Dkt. 10, Response ("Resp.") at 2. Respondents do not otherwise meaningfully address the merits of Petitioner's claims. See generally id.

On May 21, 2026, Petitioner filed a Reply in support of the Motion. Dkt. 11, Reply.

This matter, thus, stands submitted.

## III.
## LEGAL STANDARD

Under Federal Rule of Civil Procedure 65, the Court may grant a preliminary injunction to prevent "immediate and irreparable injury." Fed. R. Civ. P. 65(b). A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008).

The party seeking such relief must establish: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities weighs in its favor; and (4) the injunction is in the public interest ("Winter factors"). See id. at 20. Courts in the Ninth Circuit also employ "an alternative 'serious questions' standard, [] known as the 'sliding scale' variant of the Winter standard." Fraihat v. U.S. Immigr. & Customs Enf't, 16 F.4th 613, 635 (9th Cir. 2021) (citation modified). Under the serious questions standard, the four Winter factors are "balanced, so that a stronger showing of one element may offset a weaker showing of another." All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, a preliminary injunction may be warranted where there are "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff," so long as the other Winter factors are also met. Id. at 1132.

## IV.
## THE WINTER FACTORS WEIGH IN FAVOR OF GRANTING THE PRELIMINARY INJUNCTION

### A.    LIKELIHOOD OF SUCCESS ON THE MERITS

The likelihood of success on the merits is the most important Winter factor, which "is especially true for constitutional claims." Junior Sports Mags. Inc. v. Bonta, 80 F.4th 1109, 1115 (9th Cir. 2023) (citing Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012)). Here, the Court finds Petitioner is likely to succeed on the merits or has at least raised "serious questions" regarding the merits of his claim that his re-detention violates his right to procedural due process.[1]

### 1.    Applicable Law

Under the Due Process Clause, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment . . . lies at the

---

[1] Because the Court finds Petitioner is entitled to relief based on this claim, the Court need not address Petitioner's other claims regarding the lawfulness of his detention.

heart of the liberty" protected by the Due Process Clause. <u>Zadvydas v. Davis</u>, 533 U.S. 678, 690 (2001). "[T]he Due Process Clause applies to all 'persons' within the United States," including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." <u>Id.</u> at 693. As the Supreme Court recently reaffirmed, the Fifth Amendment "entitles [noncitizens] to due process of law in the context of removal proceedings." <u>A.A.R.P. v. Trump</u>, 605 U.S. 91, 94 (2025) (citation modified) (quoting <u>Trump v. J.G.G.</u>, 604 U.S. 670, 673 (2025)).

"Due process is flexible and calls for such procedural protections as the particular situation demands." <u>United States v. Rivera-Valdes</u>, 157 F.4th 978, 991 (9th Cir. 2025) (citation modified) (quoting <u>Morrissey v. Brewer</u>, 408 U.S. 471, 481 (1972)). In general, due process "requires some kind of a hearing before the State deprives a person of liberty or property." <u>Shinault v. Hawks</u>, 782 F.3d 1053, 1058 (9th Cir. 2015) (citation modified) (quoting <u>Zinermon v. Burch</u>, 494 U.S. 113, 127 (1990)). To determine "whether a pre-deprivation hearing is required and what specific procedures must be employed at that hearing given the particularities of the deprivation," courts apply the three-part balancing test established in <u>Mathews v. Eldridge</u>, 424 U.S. 319 (1976). <u>Yagman v. Garcetti</u>, 852 F.3d 859, 864 (9th Cir. 2017) (citation modified) (quoting <u>Shinault</u>, 782 F.3d at 1057). Under the <u>Mathews</u> test, courts consider "(1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used, and the value of additional procedural safeguards; and (3) the government's interest, including the burdens of additional procedural requirements." <u>Id.</u> (citation modified) (quoting <u>Shinault</u>, 782 F.3d at 1057).

### 2.    Analysis

Here, the Court finds Petitioner is likely to succeed on the merits of his claim that Respondents violated the Due Process Clause by re-detaining him without a pre-deprivation hearing.

First, Petitioner has a substantial private interest in remaining out of immigration custody. As noted, Petitioner was released from immigration custody after entering the United States in 2023. Pet. ¶ 16. Petitioner's release gave rise to "the most elemental of liberty interests – the interest in being free from physical detention by one's own government." <u>Hamdi v. Rumsfeld</u>, 542 U.S. 507, 529 (2004); <u>see also</u> <u>Doe v. Becerra</u>, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("Governmental actions may create a liberty interest entitled to the protections of the Due Process Clause.").

Moreover, while ICE's initial decision to release Petitioner was discretionary, <u>see</u> 8 U.S.C. § 1226(a)(2) (providing a noncitizen "may" be released on bond or "conditional parole" pending removal proceedings), that decision contained an "implicit promise that [his release] will be revoked only if he fails to live up to the [release] conditions," <u>Morrissey</u>, 408 U.S. at 482; <u>see also</u> <u>Pinchi v. Noem</u>, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody."). For nearly two and a half years, Petitioner relied on this promise to live freely in the community and "form the [] enduring attachments of normal life." <u>Morrissey</u>, 408 U.S. at 482. Additionally, the fact ICE previously held Petitioner in custody for when he first entered the United States "does not eliminate [his] liberty interest in remaining on release." <u>Valencia Zapata v. Kaiser</u>, 801 F. Supp. 3d 919, 932 (N.D. Cal. 2025) (citing <u>Morrissey</u>, 408 U.S. at 482)). To the contrary, the length of Petitioner's release since then strengthens his interest in his continued freedom from detention. <u>See</u> <u>Doe</u>, 787 F. Supp. 3d at 1093 (finding the Government's actions in conditionally allowing the petitioner to live outside immigration custody for five years created a protected liberty interest); <u>Pinchi</u>, 792 F. Supp. 3d at

1034 (finding the more than two years a petitioner lived outside of immigration custody "heightened" her liberty interest).  Hence, Petitioner establishes a significant liberty interest in remaining out of immigration custody.

Second, the risk of erroneous deprivation is significant without a pre-detention hearing. Civil immigration detention is "nonpunitive in purpose and effect" and is permissible only to reduce the risk of flight or danger to the community.  Zadvydas, 533 U.S. at 690; see also Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017) ("[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions.").  In releasing Petitioner on bond, ICE necessarily determined Petitioner did not pose a significant flight risk or danger to the community.  See 8 C.F.R. § 236.1(c)(8) (authorizing release where the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding").  Respondents offer no evidence or argument showing any material changes in Petitioner's circumstances since then.[2]  Indeed, the record suggests otherwise, as Petitioner attended all required in-person check-ins under his order of release, Pet. ¶ 17, and has no criminal history, id. ¶ 22.  The uncontroverted evidence before the Court thus "raises an inference that the government will have difficulty proving by clear and convincing evidence that Petitioner's detention is necessary to prevent danger to the community or his flight." Meneses v. Santacruz, 811 F. Supp. 3d 1158, 1164 (C.D. Cal. 2025).

Given the significant risk of an erroneous deprivation of Petitioner's liberty, a pre-detention hearing would afford Petitioner the opportunity to demonstrate he does not pose a danger to the

---

[2] In their Response, Respondents briefly cite Petitioner's Form I-213 to assert Petitioner "has a history of ISAP violations justifying redetention."  Resp. at 2.  This contention does not undermine finding a high risk of erroneous deprivation.  As an initial matter, because the Form I-213 states ICE encountered a subject with a different name and A-Number than Petitioner, it is not clear the Form I-213 accurately reflects Petitioner's information.  See Dkt. 10-1 at 3.  Even assuming the Form I-213 reflects Petitioner's purported ATD violations, Petitioner asserts he made every effort to comply with his in-person check-ins and any issues with his electronic monitoring were caused by his "documented hypertension."  Reply at 7; Pet. ¶ 17.  Given these disputes over the alleged violations, a pre-deprivation hearing before a neutral adjudicator will "provide[] a forum" for Respondents to demonstrate Petitioner's re-detention is warranted.  Rodriguez Diaz v. Kaiser, No. 25-cv-05071-TLT, 2025 WL 3011852, at *11 (N.D. Cal. Sep. 16, 2025); cf. Villela v. Robbins, No. 1:25-cv-01393-KES-SKO (HC), 2025 WL 3648362, at *5 (E.D Cal. Dec. 17, 2025) (finding a significant risk of erroneous deprivation where the government re-detained a petitioner without procedural safeguards based on alleged ISAP violations disputed by the petitioner).

In any event, Respondents notably fail to explain the factual basis for these alleged violations and how, if at all, they "materially impact the required purposes of civil immigration detention." Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1035 (N.D. Cal. 2025); see generally Resp.  It also does not appear ICE informed Petitioner of these alleged violations or provided him an opportunity to dispute them before re-detaining him.  As noted, it is well-established due process generally "requires some kind of a hearing before the State deprives a person of liberty or property." Shinault, 782 F.3d at 1058 (emphasis added) (citation modified) (quoting Zinermon, 494 U.S. at 127). Accordingly, ICE's mere belief of "a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process." E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025).

---

**CIVIL MINUTES—GENERAL**    Initials of Deputy Clerk DC

community or flight risk.  See Pinchi, 792 F. Supp. 3d at 1035 (finding the risk of erroneous deprivation was significant where neither party "had an opportunity to determine whether there is any valid basis for [the petitioner's] detention").  In contrast, without the procedural safeguard of a pre-detention hearing, ICE could, as it appears to have done so here, unlawfully re-detain Petitioner at any time, regardless of whether his detention serves any valid governmental interest.  See Fernandez v. Semaia, No. EDCV 25-03412-SPG-MBKx, 2026 WL 136229, at *6 (C.D. Cal. Jan. 13, 2026) (noting post-deprivation relief could result in the petitioner's indefinite detention "without any process").  Hence, Petitioner demonstrates a high risk of erroneous deprivation of his liberty without a pre-deprivation hearing.[3]

Third, Respondents' countervailing interest in re-detaining Petitioner and the burden of a pre-detention hearing are low.  As noted, Respondents have not shown Petitioner poses a flight risk or danger to the community, especially considering his lack of criminal history and appearance at all required in-person check-ins.  See Resp.  Thus, Respondents lack a meaningful governmental interest in continuing to detain Petitioner.  See Pinchi, 792 F. Supp. 3d at 1036 (finding no valid governmental interest where the government identified no changed circumstances regarding the petitioner's dangerousness or flight risk).  Further, while Respondents would have expended resources in providing Petitioner with notice and a hearing before re-detaining him, "those costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue."  E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025).  Regardless, custody hearings in immigration court are "routine" and impose only a "minimal" cost.  Singh v. Bowen, No. EDCV 25-03034-CAS-PDx, 2025 WL 3251437, at *7 (C.D. Cal. Nov. 21, 2025) (citation modified) (quoting Singh v. Andrews, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025)).

In sum, Petitioner has demonstrated a strong likelihood of success on the merits of his claim that his re-detention without a pre-deprivation hearing violates his right to procedural due process, especially in light of Respondents' failure to challenge the merits of his argument.  Accordingly, the first Winter factor weighs in favor of Petitioner.

## B.    LIKELIHOOD OF IRREPARABLE HARM

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"  Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017) (citation modified) (quoting Melendres, 695 F.3d at 1002).  "Deprivation of physical liberty by detention constitutes irreparable harm."  Arevalo v. Hennessy, 882 F.3d 763, 767 (9th Cir. 2018) (citing Hernandez, 872 F.3d at 994).  Among other harms, immigration detention results in "subpar medical and psychiatric

---

[3] Respondents' assertion that Petitioner is entitled to "at most" a bond hearing is unpersuasive.  Resp. at 2.  While Respondents concede Petitioner is a member of the Bond Eligible Class in Bautista, "Respondents have violated and continue to violate the law by detaining Bond Eligible Class members in contravention of the Final Judgment" in that case.  Bautista, No. EDCV 25-01873-SSS-BFMx, 2026 WL 468284, at *9 (C.D. Cal. Feb. 18, 2026).  Indeed, Petitioner has already been denied a bond hearing based on Respondents' erroneous interpretation of the applicable immigration detention statutes, notwithstanding the Final Judgment in Bautista.  See Pet. ¶ 20.  Respondents' continued "application of the wrong statute in justifying their continued detention of Petitioner without providing a bond hearing" thus further reinforces the risk of erroneous deprivation of Petitioner's liberty without a pre-deprivation hearing.  De Rosas Gutierrez v. Semaia, No. EDCV 26-01181-HDV-ACCVx, 2026 WL 916773, at *2 (C.D. Cal. Mar. 27, 2026).

---

**CIVIL MINUTES—GENERAL**                Initials of Deputy Clerk DC

care" for detainees and imposes "economic burdens" and "collateral harms" on the families of detainees. Hernandez, 872 F.3d at 995. "In the absence of an injunction, harms such as these will continue to occur needlessly on a daily basis." Id.

Here, Petitioner's release has been improperly revoked, and Petitioner has been unlawfully detained. Hence, Petitioner is – and will continue to be – irreparably harmed absent relief from this Court. See Mot. at 6 ("Petitioner's unlawful arrest and confinement inflict irreparable harm that cannot be remedied by later judicial review.").

Accordingly, the second Winter factor weighs in favor of Petitioner.

## C. BALANCE OF EQUITIES AND PUBLIC INTEREST

The final two Winter factors "merge when the Government is the opposing party." Nken v. Holder, 556 U.S. 418, 435 (2009). The Ninth Circuit has recognized "neither equity nor the public's interest are furthered by allowing violations of federal law to continue." Galvez v. Jaddou, 52 F.4th 821, 832 (9th Cir. 2022) (affirming the balance of hardships weighed in favor of plaintiffs alleging the government violated the INA).

Here, because Petitioner has demonstrated a likelihood of success on his procedural due process claim, the balance of equities and public interest "tip[] sharply" in his favor. All. for the Wild Rockies, 632 F.3d at 1135. Moreover, Respondents' interest in enforcing immigration laws is not compelling because "our system does not permit agencies to act unlawfully even in pursuit of desirable ends." Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs., 594 U.S. 758, 766 (2021) (citing Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 582, 585-86 (1952)); see also Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum. Servs., 777 F. Supp. 3d 1039, 1045-46 (N.D. Cal. 2025), appeal dismissed, No. 25-2358, 2025 WL 1189827 (9th Cir. Apr. 18, 2025) ("[C]ourts regularly find that '[t]here is generally no public interest in the perpetuation of unlawful agency action.'" (quoting League of Women Voters of U.S. v. Newby, 838 F.3d 1, 12 (D.C. Cir. 2016))). Faced with "a conflict between [administrative] concerns and preventable human suffering, [the Court has] little difficulty concluding that the balance of hardships tips decidedly in [Petitioner's] favor." Hernandez, 872 F.3d at 996.

Accordingly, the third and fourth Winter factors weigh in favor of Petitioner.

\*    \*    \*

Thus, because all four Winter factors weigh in favor of Petitioner, Petitioner is entitled to injunctive relief in the form of immediate release from immigration custody. As discussed above, Petitioner continues to suffer irreparable harm so long as he remains unlawfully re-detained. Thus, Petitioner's release is necessary to return him to the status quo, which is "the last uncontested status which preceded the pending controversy." Flathead-Lolo-Bitterroot Citizen Task Force v. Montana, 98 F.4th 1180, 1191 (9th Cir. 2024) (citation modified) (quoting GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000)). In this case, the last uncontested status is Petitioner's release on supervision before his current re-detention. See Domingo-Ros v. Archambeault, No. 25-cv-1208-DMS-DEB, 2025 WL 1425558, at *2 (S.D. Cal. May 18, 2025) ("Petitioners seek a prohibitory injunction because they seek to preserve the status quo preceding this litigation—their physical presence in the United States free from detention."). Accordingly, Petitioner's release from custody

is the appropriate remedy.  See Esmail v. Noem, No. CV 25-08325-WLH-RAOx, 2025 WL 3030590, at *6 (C.D. Cal. Sep. 12, 2025) ("Providing Petitioner an interview ex post facto, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process.").

## V.
## CONCLUSION

For the reasons set forth above, the Court orders as follows:

1.  Petitioner's Motion is **GRANTED**;[4]
2.  Respondents are **ORDERED** to immediately release Petitioner from their custody under the same conditions as his most recent Order of Release on Recognizance prior to his re-detention;
3.  Respondents are **ORDERED** to return any confiscated property and documents to Petitioner upon his release;
4.  Respondents are **ENJOINED** from re-detaining Petitioner without providing him a pre-detention hearing before a neutral decisionmaker where Respondents bear the burden of demonstrating by clear and convincing evidence that Petitioner is a flight risk or a danger such that his physical custody is required;
5.  Respondents are **ORDERED** to file a status report no later than May 26, 2026, regarding their compliance with this Order; and
6.  The parties shall file a stipulated order and judgment granting the Petition on the same grounds and under the same terms as this Order, with all appellate rights reserved.  If for any reason the parties cannot comply with this instruction, the parties shall file a joint status report no later than seven (7) days from the date of this Order explaining why.

This Order shall remain in effect until further order by the Court.  Failure to comply with this Order will result in sanctions.  Pursuant to General Order No. 05-07, further proceedings on the merits of the petition are referred to the Magistrate Judge.  Any objections to Report and Recommendations issued by the Magistrate Judge shall be filed no later than three (3) days from the date of the Report and Recommendation.

**IT IS SO ORDERED**.

---

[4] Federal Rule of Civil Procedure 65(c) permits a court to grant injunctive relief "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court 'with discretion as to the amount of security required, if any.''"  Johnson v. Couturier, 572 F.3d 1067, 1086 (9th Cir. 2009) (emphasis removed) (quoting Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003)).  Here, it is unlikely Respondents will incur any significant costs, and requiring a bond "would have a negative impact on plaintiff's constitutional rights, as well as the constitutional rights of other members of the public."  Baca v. Moreno Valley Unified Sch. Dist., 936 F. Supp. 719, 738 (C.D. Cal. 1996).  Accordingly, the Court waives the bond requirement.